Agnes, A.J.
INTRODUCTION
This is a civil action under G.L.c. 231C, §2, added by St. 2000, c. 427, in which Ovation Capital, LLC (“Ovation”), and Anthony M. Lizotte (Lizotte) have applied to the court for a final order of authorization for the transfer of structured settlement rights from the “Annuity Issuer,” Berkshire Hathaway Life Insurance Company of Nebraska and the “obligor,” BHG Structured Settlements, Inc. to Ovation in exchange for accelerated payments by Ovation to the payee, Anthony Lizotte, in the amount of $41,000.
BACKGROUND
The essential facts are not in dispute. On June 27, 1997, this Court approved a third-party settlement in a Workers’ Compensation case under G.L.c. 152, §15. See Lizotte v. Anderson Products, Inc., Worcester Superior Court Civil Action No. 95-1661C. In that case, Lizotte sustained injuries while working at Anderson Products Company on assignment from a temporary employment agency. The injury involved the loss of his thumbs and an index finger. The settlement consisted of several elements: (i) Lizotte received a cash payment of $250,000 (after deduction of $500,000 in legal fees) and (ii) structured future payments of $4,300 per month, payable each month until his death (DOB June 26, 1970) or until June 1, 2027 whichever period is longer. The present value of the total settlement in 1997 was 1.5 million dollars. Lizotte also waived any right to future compensation, beyond reimbursement for 1/3 of the cost of future causally related medical and vocational rehabilitation bills, in exchange for a lien holder’s waiver of its lien with respect to sums paid to Lizotte up to the date of the approval of the settlement.
Under the terms of Lizotte’s 1997 structured settlement, he is entitled to 360 guaranteed monthly payments of $4,300 beginning that year. Under the terms of the proposed transfer agreement between Ovation and Lizotte, Ovation would acquire 240 months of the remaining guaranteed payments as follows: for 141 months (9 /1 /03 to 5/1 /15) at $400 per month; for 24 months (6/1/15 to 5/1/17) at $800 per month; for 33 months (6/1/17 to 2/1/20) at $1,900 per month; for 24 months (3/1/20 to 2/1/2022) at $2,300 per month; and 18 months (3/1/2022 to 8/1/2023) at $3,900 per month.
At the original hearing before the court (McCann, J.) in this matter on July 18, 2003, the transferee, Ovation, appeared with counsel and the payee, Lizotte appeared without counsel. The court also had correspondence from the “Annuity Issuer,” Berkshire Hathaway Life Insurance Company of Nebraska and the “obligor,” BHG Structured Settlements, Inc., raising several concerns about the prudence and the legality of the proposed transfer. See letter dated July 7, 2003. Lizotte reported that he had discussed the details of the proposed transfer with his attorney. The transferee reported that it had provided Lizotte with a disclosure statement, and identified for him all payments, costs, and fees, the applicable factoring, interest and discount rates. Lizotte had executed an affidavit declaring that he understood and approved of the proposed transfer. Lizotte reported that he was interested in investing in a restaurant or business in New York City with an unemployed “friend,” and needed access to cash because he is unable to secure conventional financing. Lizotte conceded that he was unclear about exactly what type of business he would be investing in. Counsel for Ovation explained that the proposed transfer means that Lizotte would be giving $263,700 in structured settlement dollars to Ovation in exchange for a single payment of $41,000. See Transcript 1-7 (Hearing on July 7, 2003). It also was reported that Lizotte was familiar with the issues *237 because he had previously entered into one or two other transfers of a portion of his structured settlement before the effective date of G.L.c. 231C. He was unclear about the details of these transfers which were undertaken without court approval. One transaction involved the transfer of $2300 of his monthly payment in exchange for a “loan” of $141,000. It was reported that Lizotte, who is separated from his wife, has two young children — a 5-year-old daughter and a 31/2-year-old son whom he has contact with and supports. Finally, Lizotte reported that he had “lost a lot of money” dealing in foreign currency in recent years through a broker in Florida. Following this initial hearing, the court continued the hearing to give Lizotte a further opportunity to consult with counsel.
At the second hearing on October 29, 2003, Ovation appeared again with counsel and Lizotte appeared with counsel. Counsel for Lizotte reported that his client had been fully briefed about the details of the proposed transfer, and was fully aware of the risks. He also reported that Lizotte had decided to take additional measures to safeguard his children’s interests by proposing to create two $10,000 trusts (one for each child) and that the balance would be used to invest in real estate because otherwise he is unable to obtain conventional financing. The result of the transfer would be that 50% of the remaining monthly cash proceeds of his 1997 structured settlement ($800) through the year 2015 would become payable to Ovation in exchange for a cash payment of $41,000.
DISCUSSION
1. The Requirement of Court Approval Under New Statute.
Under G.L.c. 231C, §2, “(n]o direct or indirect transfer of structured settlement payment rights shall be effective . . . unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction . . . based on the court’s . . . written express findings with respect to seven matters as follows:
(1) the transfer complies with the requirements of this chapter and will not contravene other applicable law;
(2) not less than ten days before the date on which the payee first incurred an obligation with respect to the transfer, the transferee has provided to the payee a disclosure statement in bold type, no smaller than 14 points, specifying:
(i) the amounts and due dates of the structured settlement payments to be transferred;
(ii) the aggregate amount of the payments;
(iii) the discounted present value of the payments, together with the discount rate used in determining the discounted present value;
(iv) the gross amount payable to the payee in exchange for the payments;
(v) an itemized listing of all brokers’ commissions, service charges, application fees, processing fees, closing costs, filing fees, referral fees, administrative fees, legal fees, notary fees, and other commissions, fees, costs, expenses and charges payable by the payee or deductible from the gross amount otherwise payable to the payee;
(vi) the net amount payable to the payee after deduction of all commissions, fees, costs, expenses and charges described in clause (v);
(vii) the quotient, expressed as a percentage, obtained by dividing the net payment amount by the discounted present value of the payments, which shall be disclosed in the statement as follows: The net amount that you will receive from us in exchange for your future structured settlement payments represent_% of the estimated current value of the payments’;
(viii) the effective annual interest rate, which rate shall be disclosed in the statement as follows: ‘Based on the net amount that you receive from us and the amounts and timing of the structured settlement payments that you are turning over to us, you will, in effect, be paying interest to us at a rate of_% per year’; and
(ix) the amount of any penalty and the aggregate amount of any liquidated damages, including penalties payable by the payee in the event of a breach of the transfer agreement by the payee;
(3) the payee has established that the transfer is in the best interests of the payee and the payee’s dependents;
(4) the payee has received, or waived the right to receive independent professional advice regarding the legal, tax and financial implications of the transfer;
(5) the transferee has given written notice of the transferee’s name, address, and taxpayer identification number to the annuity issuer and the structured settlement obligor and has filed a copy of the notice with the court or responsible administrative authority;
(6) the transfer agreement provides that if the payee is domiciled in the commonwealth, any disputes between the parties shall be governed, interpreted, construed, and enforced in accordance with the laws of the commonwealth and that the domicile state of the payee is the proper place of venue to bring any cause of action arising out of a breach of the agreement; and
(7) the court or responsible administrative agency has made a determination that the net amount payable to the payee is fair, just and reasonable under the circumstances then existing.
*238 2. Consideration of the “Best Interest” of the Payee.
One of the most important factors to be considered in an application for approval under G.L.c. 231C is whether the proposal is in the “best interests” of the payee. The Legislature has not defined “best interests” of the payee for purposes of G.L.c. 231C, nor has it given us any specific factors to examine. The burden rests with the payee to demonstrate that the proposed transfer is in his best interests. From the text and structure of the new law, however, it seems reasonable that any determination of best interests calls upon the court to examine not only the terms of the proposed transfer, i.e., whether it represents a bargain that reasonable persons would regard as fairly reasonable under prevailing market conditions, but also the personal characteristics of the payee, and the circumstances of his family. Here, the payee has a history of extremely poor investment decisions.[1] Also, approval of the transfer would allow the payee to make any investment he chooses with the portion of the proceeds he has reserved to himself ($21,000). He has two young children. While he proposes to set aside $10,000 for each of them in trusts, it is important to consider whether the transfer will otherwise result in an improvement in or degradation of the payee’s personal financial security. There is no evidence before me that suggests the payee is knowledgable about the real estate market, or that he has even explored the multitude of issues surrounding the purchase of real estate for investment purposes. He has not even identified a specific piece of property he wishes to purchase. He has not presented the court with the specific terms of any purchase, including the costs of comparable pieces of residential or commercial property in the relevant geographical area. Under the circumstances, the payee has not established that approval of the transfer would beta his best interests. A transfer of structured payment settlement rights in the form of a deeply discounted payment to an unsophisticated investor with a poor track record of investments, who has not identified a specific investment opportunity with sufficient clarity and definiteness to permit an objective assessment of its merits, and who has young children, no other source of income, and dim prospects for future potential earnings would not be in his best interests.
3. Other Considerations.
G.L.c. 231C also requires the court to make a finding that the proposed transfer “will not contravene other law.” As an interested party, the “Annuity Issuer,” Berkshire Hathaway Life Insurance Company of Nebraska (“BHLN”) and the “obligor,” BHG Structured Settlements, Inc. (“BHG”) have appropriately corresponded with the court as “interested parties,” G.L.c. 231C, §§1 and 2(f),[2] and pointed out, among other things, that under the terms of Lizotte’s original 1997 settlement, he waived “the power to sell, mortgage, encumber or anticipate the future payments, or any part thereon by assignment or otherwise.” The proposed transfer would violate the terms of the earlier settlement agreement. There is nothing contained in G.L.c. 231C that suggests the legislature intended to authorize courts to allow parties to avoid the terms of such settlement agreements.
Also, under G.L.c. 231C, §2(a)(7), the court must consider and find that the “net amount payable to the payee is fair, just and reasonable under the circumstances then existing.” As pointed out by the “Annuity Issuer,” Berkshire Hathaway Life Insurance Company of Nebraska (“BHLN”) and the “obligor,” BHG Structured Settlements, Inc. (“BHG”) in their letter of July 7, 2003, under the terms of the proposed transfer, “Mr. Lizotte would be borrowing money from Ovation at a rate of 16.47% in return for the surrender of his future support. Even standing alone, a discount rate of 16.47% appears to be extraordinarily high, given current market conditions.”
ORDER
For the above reasons, the application for approval of the proposed transfer of structured settlement payment rights is DENIED.

 Basically, Mr. Lizotte has admitted that all his previous investments have resulted in losses.

 The obligor and owner of the annuity elected to send a letter to the court and parties in lieu of appearing to avoid incurring added expenses that would ultimately have to be passed on to Lizotte.